UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSE GALAZO, | : |
|     Plaintiff, | : |
| v. | :    No. 3:01CV1589(DJS) |
| CITY OF WATERBURY, KEVIN J. DALY, JR., SIMON DELBUONO, MARTIN TOMA, MICHAEL PIEKSZA, JR., MARK SANTOPIETRO, JAMES NARDOZZI, CHARLES SAMPSON, and GARY PELOSI, | : |
|     Defendants. | : |

## MEMORANDUM OF DECISION

Plaintiff Jose Galazo brings this action for money damages against defendants the City of Waterbury, Kevin Daly, Jr., Simon DelBuono, Martin Toma, Michael Pieksza, Jr., Mark Santopietro, James Nardozzi, Charles Sampson, and Gary Pelosi based upon the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983. Defendants the City of Waterbury, Santopietro, Nardozzi, Sampson, and Pelosi (hereinafter "defendants") have filed a motion for summary judgment (dkt. # 43), which, for the reasons set forth herein, is **GRANTED in part** and **DENIED in part**.

### I. FACTS

Galazo is a resident of Waterbury, Connecticut. At all times relevant to his complaint, Galazo was employed as a dishwasher and preparation cook at The Brass Horse Bar ("Brass Horse"), which is located in Waterbury, Connecticut. Defendants

DelBuono, Toma, and Pieksza are interest-holders in M.P.S.D.M.T., LLC, which owned the Brass Horse during the relevant time period. Santopietro, Sampson, Pelosi, and Nardozzi were police officers employed by the City of Waterbury, and Daly was a Police Legal Advisor to the Waterbury Police Department.

On March 17, 1999, an incident occurred between Galazo and certain defendants. March 17, 1999 was St. Patrick's Day, and several off-duty Waterbury police officers were present at the Brass Horse as patrons. In the evening of that day, Galazo was in the kitchen slicing corned beef when Pieksza entered the kitchen and slapped Galazo. When Galazo confronted Pieksza, Pieksza told Galazo that, if Galazo did not approve, Galazo could "get the hell out of my kitchen." Galazo then left the Brass Horse, and Pieksza soon followed Galazo. Pieksza, who was accompanied by other men, called out to Galazo. Galazo turned to face Pieksza, but then resumed walking away from the Brass Horse. As Galazo was walking away, Pieksza punched Galazo in the back of the head. The other men[1] with Pieksza, including Sampson, and, according to Galazo, Santopietro, also joined the altercation against Galazo.

Galazo managed to free himself from the fray and then ran to

---

[1] Galazo stated that a total of six men, including Pieksza, assaulted him outside the Brass Horse. Contrary to Galazo's Local Rule 9(c)2 statement, Galazo testified that Pelosi was not present during the incident at the Brass Horse. (See Dkt. # 43, Ex. 1 at 40:12-14).

a nearby police car. Upon reaching the police car, Galazo was beaten by the two officers who were in the cruiser.[2] Following this encounter, Galazo leaned on a wall near the Brass Horse, where his original assailants were also present, and some of the original assailants produced police identification to uninvolved individuals mulling about the scene. Galazo was then handcuffed, placed in the police cruiser, and taken to the police station.

Criminal charges were brought against Galazo arising from this incident. On May 19, 1999, the prosecution entered nolle prosequi on the charges against Galazo. On July 23, 1999, Galazo's counsel requested that the City of Waterbury Police Department provide him with all records concerning Galazo pursuant to the Freedom of Information Act. On September 16, 1999, Daly responded by stating that the records could not be released because the criminal charge was subject to being reopened.

Galazo testified that, some time after the incident, Nardozzi and Pelosi contacted him regarding the incident. Galazo testified that he contacted the Mayor of Waterbury regarding the incident. According to Galazo, Nardozzi came to Galazo's house about an hour and a half following Galazo's call to the mayor. Galazo alleges that Nardozzi instructed Galazo to "Stay off the

---

[2] Galazo has not asserted any claims against the two officers from the police cruiser.

phones," and then stated that Nardozzi had two checks in his possession for Galazo from the Brass Horse, but that the only way Galazo would get the checks would be if he kept quiet. Galazo also testified that Nardozzi stated to Galazo that "You have one in the well with us." Galazo also testified that Pelosi called Galazo's home and threatened Galazo's financee, Sheri Roy.

## II. DISCUSSION

Galazo brings this action pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983. The Complaint sets forth the following claims: (1) excessive force during the course of an arrest; (2) false arrest; (3) malicious prosecution; (4) violation of Galazo's substantive due process rights;[3] (5) denial of the right of access to the courts; (6) intentional infliction of emotional distress; and (7) assault and battery. Defendants argue that Galazo cannot, as a matter of law, prevail on his claims against them.

### A.  STANDARD

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.

---

[3] The papers submitted to the court do not discuss this claim.

R. Civ. P. 56(c). Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" American Int'l Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981) (quoting Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975)). A dispute concerning a material fact is genuine "'if evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The court must view all inferences and ambiguities in a light most favorable to the nonmoving party. See Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Id.

### B. MUNICIPAL LIABILITY

Galazo claims that the City of Waterbury should be held liable for the actions of its employees. "A municipal entity may be liable under 42 U.S.C. § 1983 only if the alleged constitutional violation was caused by the entity's 'policy or custom.'" Monell v. Dep't of Social Servs., 436 U.S. 658, 694

(1978). Thus, in order to prevail against a municipality, a plaintiff cannot simply rest on the actions of the municipality's employees. Instead, a plaintiff must show that any constitutional deprivation suffered by him was the result of a custom, policy, or practice of such conduct within the municipality. Id. The City of Waterbury argues that there is no evidence in the record of a custom, policy or practice that caused the constitutional violations alleged in the complaint. Galazo has offered no evidence that the City of Waterbury had a custom, policy or practice in effect that caused the deprivations of his constitutional rights alleged in the complaint. Given the absence of any evidence in this regard, the City of Waterbury is entitled to judgment as a matter of law on all claims against it.

### C. EXCESSIVE FORCE

Defendants argue that, because they were present at the Brass Horse while they were off-duty for the purpose of socializing, they did not act under the color of law during the altercation with Galazo. The phrase "under the color of law" means "'under "pretense" of law' and that 'acts of officers in the ambit of their personal pursuits are plainly excluded.'" Pitchell v. Callan, 13 F.3d 545, 548 (2d Cir. 1994) (quoting Screws v. United States, 325 U.S. 91, 111 (1945)). In determining whether an officer was acting under the color of law, "courts look to the nature of the officer's act, not simply his

duty status." Id.

There is evidence in the record that could allow the factfinder to conclude that the defendants who were involved in the altercation with Galazo were acting under the color of law. Specifically, defendants offer the Incident and Offense Report, in which the writer of the report recounts that Pieksza, knowing that the writer was a police officer, asked the writer to intercede in an employment dispute with Galazo because Galazo was becoming agitated. The tone of the report suggests that the officer was interceding in the dispute between Galazo and Pieksza as a police officer, despite the fact that he or she was off-duty while at the Brass Horse. Police intercession prior to the altercation could be enough to support the conclusion that the altercation was directly related to the police intercession and that the officers acted with the imprimatur of official authority when they engaged in the altercation. Therefore, defendants' motion must be denied regarding Galazo's excessive force claim.

Certain defendants named in the complaint also argue that they may not be held liable for using excessive force on Galazo because they were not present at the Brass Horse at the time of the incident on March 17, 1999. Santopietro states that he was in Florida on the night in question. He has also submitted a travel itinerary in his name indicating that he was to depart Hartford on March 10, 1999 and arrive back in Hartford on March

22, 1999, and a record of a parking ticket, which he paid, from the City of Key West, Florida, which was issued on March 13, 1999. Galazo testified that Santopietro was present at the Brass Horse on March 17, 1999. The resolution of conflicting testimony is an issue for the trier of fact, and the court cannot find that Santopietro was not a participant in the altercation on March 17, 1999.[4]

Nardozzi also alleges that he was not present at the Brass Horse at the time of the incident on March 17, 1999. Galazo admits Nardozzi's contention. However, Galazo argues that Nardozzi should be held liable for the use of excessive force on March 17, 1999 on account of his going to Galazo's home with the two checks and suggesting to Galazo that the police would look favorably upon Galazo's silence regarding the incident. On the record before the court, there is no way that Nardozzi's conduct, which occurred some time after the March 17, 1999 incident, could be deemed to have caused the use of excessive force upon Galazo on March 17, 1999. Nor could Nardozzi be deemed to have ratified or allowed the use of force upon Galazo on March 17, 1999. Therefore, Nardozzi cannot be held liable for the use of excessive force on Galazo.

---

[4] Although the court cannot resolve this issue at this time, the parties are urged to ascertain whether there is any good faith basis to pursue a claim against Santopietro further.

### D. FALSE ARREST

Defendants contend that Galazo has not named the officer or officers who placed him under arrest as defendants in this action. As such, defendants argue, Galazo cannot, as a matter of law, prevail on his claim of false arrest. However, it is not clear from the record the extent to which defendants who were present at the scene on March 17, 1999 participated in the arrest. Therefore, defendants have not met their burden of demonstrating that there is no material issue for trial on this claim.

### E. MALICIOUS PROSECUTION

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment . . . and establish the elements of a malicious prosecution claim under state law. . . ." Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002). Under Connecticut law, a plaintiff seeking to recover for malicious prosecution must prove the following:

> (1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice.

McHale v. W.B.S. Corp., 187 Conn. 444, 447 (1982).

Defendants argue that Galazo may not prevail on his claim of

-9-

malicious prosecution because the criminal proceedings against him did not terminate in his favor. On May 18, 1999, the prosecution nolled the criminal charge against Galazo. The entry of nolle prosequi in a criminal case is "except when limited by statute or rule of practice . . .; a unilateral act by a prosecutor, which ends the 'pending proceedings without an acquittal and without placing the defendant in jeopardy.'" Cislo v. City of Shelton, 240 Conn. 590, 599 n.9 (1997) (quoting State v. Lloyd, 185 Conn. 199, 201 (1981)).

"Where a prosecution did not result in an acquittal, it is generally not deemed to have ended in favor of the accused, for purposes of a malicious prosecution claim, unless its final disposition is such as to indicate the accused's innocence." Fulton, 289 F.3d at 196. "In the absence of a decision on the merits, the plaintiff must show that the final disposition is indicative of innocence." Russell v. Smith, 68 F.3d 33, 36 (2d Cir. 1995). The Connecticut Supreme Court has stated the following regarding the effect of the entry of nolle prosequi in a criminal case upon a subsequent action for malicious prosecution:

> It is not necessary that the accused should have been acquitted. It is sufficient if he was discharged without a trial under circumstances amounting to an abandonment of the prosecution without request from or by arrangement with him. . . . Such a termination of the prosecution is sufficient ground for the institution of the action, but it does not, of itself, establish want of probable cause or malice, which are

-10-

to be determined at the trial upon all the facts. See v. Gosselin, 133 Conn. 158, 160 (1946); see Cislo, 240 Conn. at 609. In light of the Connecticut Supreme Court's articulation of the effect of the entry of nolle prosequi in an underlying criminal prosecution upon a plaintiff's ability to state a claim for malicious prosecution, the court cannot find that Galazo may not prevail upon his claim of malicious prosecution.

### F. DENIAL OF ACCESS TO THE COURTS

Galazo claims that Daly impeded his access to this court by unlawfully refusing to produce, in response to Galazo's counsel's Freedom of Information Act request, the police records from the March 19, 1999 incident. There is a constitutional right, derived from the First and Fourteenth Amendments to the U.S. Constitution, to seek redress for grievances from the Government in the judicial system. See Friedl v. City of New York, 210 F.3d 79, 86 (2d Cir. 2000). "The constitutional right of access is violated where government officials obstruct legitimate efforts to seek judicial redress." Whalen v. County of Fulton, 126 F.3d 400, 406 (2d Cir. 1997); see Barrett v. U.S., 798 F.2d 565, 575 (2d Cir. 1986) ("Unconstitutional deprivation of a cause of action occurs when government officials thwart vindication of a claim by violating basic principles that enable civil claimants to assert their rights effectively.").

Defendants correctly point out that Galazo's claim suffers

-11-

from the same infirmity as that present in a case decided by the Court of Appeals for the Seventh Circuit, captioned <u>Thompson v. Boggs</u>, 33 F.3d 847 (7th Cir. 1994). In <u>Thompson</u>, the Court of Appeals affirmed the district court's dismissal of the plaintiff's claim of denial of access to the courts. See <u>id.</u> at 853. The Court of Appeals reasoned that the defendants could not have concealed or otherwise prevented the plaintiff from discovering the true facts that would support an actionable claim against them because the plaintiff was present during the entire incident, and therefore had ample access to the facts necessary to file an actionable claim. See <u>id.</u> at 852 ("[T]he plaintiff Thompson herein was not deprived of adequate, effective, or meaningful access to the courts because he was personally involved in the incident and thus had firsthand knowledge of all the facts and circumstances surrounding his arrest."). Here, Galazo was present during the entire incident, and Daly could not, as a matter of law, have prevented Galazo from seeking meaningful redress in court for the actions of the other defendants. Daly is entitled to judgment as a matter of law on Galazo's claim that Daly denied Galazo access to the courts.

### G. STATE LAW CLAIMS

Defendants' sole basis for requesting judgment in their favor on Galazo's state law claims is that Galazo has failed to present actionable federal claims. Because the court will not

enter judgment in favor of defendants on all of Galazo's federal claims at this time, defendants' motion for summary judgment on Galazo's state law claims must be denied.

### III.  CONCLUSION

For the reasons stated herein, defendants' motion for summary judgment (dkt. # 43) is **GRANTED in part** and **DENIED in part**.  This matter is referred to the Honorable Thomas P. Smith, United States Magistrate Judge, for the purpose of conducting a settlement conference.  The parties shall file their joint trial memorandum on or before **April 30, 2004**.

**IT IS SO ORDERED** at Hartford, Connecticut, this 20th day of February, 2004.

```
                    DOMINIC J. SQUATRITO
                    UNITED STATES DISTRICT JUDGE
```